FILED

2007 Sep-13 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **EARCILE TURNER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **2:06-CV-1578-VEH** |
| **JOHN E. POTTER, Postmaster** | ) |
| **General, United States Postal Service,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Before the court is the motion of the Defendant, John E. Potter, Postmaster

General of the United States Postal Service (hereinafter "Defendant"), for summary

judgment[1] as to the claims of the plaintiff, Earcile Turner (hereinafter "Plaintiff").

---

[1] The motion for summary judgment was originally filed as a Rule 12(b)(6) motion to dismiss or, in the alternative, for summary judgment. However, FED. R. CIV. P. 12(b)(6) provides in relevant part: "A motion making any [Rule 12(b)] defenses <u>shall be made before pleading</u> if a further pleading is permitted. . . ." (Emphasis added). Because Defendant filed its Answer to Plaintiff's Complaint prior to filing its pending motion, the court cannot consider the motion as a Rule 12(b)(6) motion to dismiss. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (holding that, after a responsive pleading such as an answer "ha[s] been filed, under the plain language of Rule 12(b), a motion to dismiss [is] inappropriate.").

Nevertheless, because the court has considered matters outside the pleadings in its disposition of the pending motion, the court shall address the motion as a motion for summary judgment. *See* FED. R. CIV. P. 12(b).

(doc. 13).  For the reasons set forth herein, the motion is due to be **GRANTED**.

## I.      FACTUAL AND PROCEDURAL HISTORY[2]

Plaintiff is a black female who entered employment with Defendant in July 1995.  (doc. 1, ¶ II-1).  At all times relevant to this action, Plaintiff worked as a clerk in Defendant's facility in downtown Birmingham, Alabama.  (Id., ¶ III-3).

During Plaintiff's employment with Defendant, Defendant operated under an agreement with BMG Direct (hereinafter "BMG"), a manufacturer of musical compact discs that BMG distributed to its customers through the mail stream.  (Def. exh. 19).  Per Defendant's agreement with BMG, Defendant destroyed all compact discs that had been refused by BMG's customers and returned to Defendant's local facilities.  (Id.).

Defendant received compact discs that had been refused by BMG's customers

---

[2]    These are the facts for summary judgment purposes only.  They may not be the actual facts.  See *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'")(citation omitted).  Facts are undisputed unless otherwise noted.  Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 at 1115 (11th Cir. 1993).

For summary judgment purposes, it is proper for the court to cite to the factual history of a case by referencing the "admitted facts" and "additional admitted facts" as stipulated by the parties.  In the present case, however, the parties' statements of facts do not correspond to each other as either "admitted" or "denied."  Rather, each party offers its own version of the facts and neglects to admit or deny the other party's asserted factual history.  Defendant's Reply contains no response whatsoever to Plaintiff's statement of facts.  Therefore, the court will address the facts as established directly from the record.

at its Birmingham facility.  (Arney Dep. pg. 22).  As with other returned mail, the compact discs were routed to Defendant's Computerized Forwarding System (hereinafter "CFS"), where Plaintiff worked as a clerk.  (Id.; doc. 1, ¶ 3; Warren Dep. pg. 8; Def. exh. 5 at 10).

On March 28, 2005, Postal Inspector Jeff Arney (hereinafter "Arney") received information that at least one of Defendant's employees, Ronald Teague, had been selling, for profit, compact discs that Defendant had received at its CFS Unit to Coconut's Music Store (hereinafter "Coconut's") in Homewood, Alabama, in return for money.[3]  (Arney Dep. pp. 10-24; Def. exh. 5 at 10, 22).  Arney also learned that Ronald Teague's mother, Cheri Teague, had also sold compact discs that she had taken from Defendant's CFS Unit to Coconut's.  (Arney Dep. pp. 14, 17; Def. exh. 5 at 10).  Cheri Teague was also employed at Defendant's CFS Unit, where she worked as Plaintiff's supervisor.  (Id., pg. 22; Pl. Dep. pg. 16; Def. exh. 5 at 10).

Upon interviewing both Ronald Teague and Cheri Teague, Arney learned that various other employees of Defendant, including Plaintiff, had also removed compact discs from the CFS Unit and were selling them to Coconut's in return for money. (Arney Dep. pp. 48, 52-53; Def. exh. 5 at 11, 23).

---

[3] Arney was so informed by Mr. William Phillips (hereinafter "Mr. Phillips"), manager of Coconut's at its Homewood location.  (Arney Dep. pp. 11-12).

3

Arney thereafter interviewed Plaintiff, who admitted to removing approximately 60 compact discs from the CFS Unit. (Arney Dep. pg. 53; Def. exh. 5 at 11, 23-24). Plaintiff claimed she had never sold the discs to Coconut's, which Arney verified with Mr. Phillips. (Arney Dep. pg. 74-75; Def. exh. 5 at 11, 24-25). Plaintiff had given some of the discs to her sons, who she believed might have sold them to Coconut's. (Arney Dep. pg. 76).

Plaintiff admitted these facts to her department manager, Madison Warren (hereinafter "Warren"). (Def. exh. 5 at 49). She also claimed to have witnessed Cheri Teague remove compact discs from Defendant's facility, but refused to provide names of other employees whom she knew to be engaged in the same conduct. (Arney Dep. pg. 77; Def. exh. 21 at 1; Def. exh. 7). Arney later learned from Coconut's that Plaintiff's son had sold it 26 compact discs that were traced back to Defendant's CFS Unit (in return for $89.21). (Arney Dep. pg. 79; Def. exh. 5 at 25).

On May 10, 2005, Plaintiff was suspended from work without pay, pending the outcome of Arney's investigation. (Def. exh. 9). On June 15, 2005, Plaintiff was notified of her proposed termination. (Def. exh. 10; Def. exh 5 at 56).

On June 17, 2005, Plaintiff filed a grievance through the American Postal Workers' Union, alleging that her proposed termination violated Defendant's collective bargaining agreement with the union. (Def. exh. 12). Meanwhile, on

4

September 19, 2005, Plaintiff was informed via letter from Defendant that her employment would be terminated effective September 23, 2005.  (Def. exh. 11).  Her prior grievance was submitted to arbitration, under which the termination was upheld on February 13, 2006.  (Def. exh. 13).

On May 9, 2006, Plaintiff filed a complaint with Defendant's Equal Employment Opportunity (hereinafter "EEO") office, in which she alleged that her termination was discriminatory in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII").  (Def. exh. 15).  The complaint was dismissed as untimely, because Plaintiff had not initiated contact with an EEO counselor within 45 days of September 23, 2005, the effective date of Defendant's decision to terminate her.  See 29 C.F.R. 1614.107(a)(2); 29 C.F.R. § 1614.105(a)(1).  (Def. exh. 16 at 2).  Plaintiff was notified of her right to appeal the dismissal with the Equal Employment Opportunity Commission, or file a civil action in this court within 90 days of her receipt of the EEO's notice of dismissal.  (Id.).

Plaintiff initiated this action on August 10, 2006.  (doc. 1).  Defendant filed its Answer on October 11, 2006.  (doc. 4).  Defendant's Motion for Summary Judgment was filed on June 15, 2007.  (doc. 13).

5

## II.    STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R .CIV. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was based on intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148,  156 L.Ed.2d 84 (2003), that allocation scheme applies

6

only in cases where there is no direct evidence of discrimination.  *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision.  *McDonnell Douglas Corp.*, 411 U.S. at 802-05, 93 S.Ct. at 1824-27; *Burdine*, 450 U.S. at 252-54, 101 S.Ct. at 1093-95; *Desert Palace*, 539 U.S. at 101-02, 123 S.Ct. at 2155-56.

## III.    ANALYSIS

### 1.    Plaintiff's EEO complaint was untimely filed.

Defendant first argues that Plaintiff's complaint should be dismissed because Plaintiff has failed to satisfy the administrative prerequisites to a Title VII action in this court.  Specifically, Defendant avers that, as its EEO Office already concluded,

Plaintiff did not file her EEO complaint within the time allotted by 29 C.F.R. §
1614.105(a)(1), which allows a claimant 45 days to initiate the grievance process for
an alleged Title VII violation in the federal sector of employment.

Plaintiff responds that she timely initiated contact with an EEO counselor by
filing her Information for Pre-Complaint Counseling with Defendant's EEO Office
on March 6, 2006, and by filing her EEO complaint on May 9, 2006. (Def. exh. 14-
15). Defendant avers, however, that Plaintiff could not have timely initiated EEO
contact on March 6, 2006, because the limitations period had already expired by that
date. According to Defendant, the limitations period began to run on September 23,
2005, the date by which it had decided to terminate Plaintiff's employment and by
which Plaintiff had been informed of that decision. (See Def. exh. 11).

Plaintiff disagrees, arguing that the limitations period did not begin to run until
she was officially removed from Defendant's payroll on February 13, 2006. In
support of this argument, Plaintiff submits numerous documents, all of which indicate
that her employment was not officially terminated until February 13, 2006.[4]

---

[4] Said documents include (1) a letter from Defendant's Retirement Processing Branch,
indicating Plaintiff's separation date of February 13, 2006 (Pl. exh. 8); (2) Defendant's
Notification of Personnel Action, including Plaintiff's removal effective February 13, 2006, and
a "last day in pay status" of February 13, 2006 (Pl. exh. 7); (3) a Request for Offset for Past-Due
Health Benefits Premiums from Defendant's Office of Personnel Management, listing Plaintiff's
termination date of February 13, 2006 (Pl. exh. 9); (4) Defendant's Request for Recovery of Debt
Due from Plaintiff, including Plaintiff's termination date of February 13, 2006 (Pl. exh. 10); (5) a
Notice of Conversion Privilege from Defendant's Human Resources Department, explaining that

According to Plaintiff, because she was not terminated until February 13, 2006, the limitations period for filing her EEO complaint did not begin to run until that date, and, therefore, her EEO complaint was timely.

The court agrees with Defendant, and finds that Plaintiff did not timely initiate contact with Defendant's EEO Office. The Supreme Court addressed the running of a Title VII limitations period in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In *Ricks*, the court instructed that "[d]etermining the timeliness of [the plaintiff's] EEOC complaint . . . requires us to identify precisely the 'unlawful employment practice' of which he complains." 449 U.S. at 257, 101 S.Ct. at 504. In the present case, Plaintiff complains that Defendant's <u>decision to terminate her</u> was based on race and gender discrimination. However, like the plaintiff in *Ricks*, Plaintiff here appears to assert a "continuing violation" theory, under which Defendant informed her of its discriminatory decision to terminate her effective September 23, 2005, but the violation continued, and therefore the limitations period did not begin to run, until Plaintiff was officially terminated the following February.

---

Plaintiff's life insurance coverage terminated on February 13, 2006 (Pl. exh. 11); (6) a Notice of Change in Health Benefits Enrollment, explaining that Plaintiff's health insurance covered was terminated effective February 17, 2006 (Pl. exh. 12); and (7) Defendant's advertisement to fill Plaintiff's vacant position, indicating that the position was vacated on February 13, 2006. (Pl. exh. 13).

The court in *Ricks* rejected this theory, explaining that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." 449 U.S. at 253-54, 101 S.Ct. at 501-02, citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Similar to the present case, the court explained further that "the only alleged discrimination that occurred – and the filing limitations periods therefore commenced – at the time the [termination] decision was made and communicated to [the plaintiff]. That is so even if the *effects* of the [decision to terminate] . . . did not occur until later." *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504 (emphasis in original). "The proper focus [for determining when the limitations period begins to run] is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.*, quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979) (emphasis added in *Ricks*). *See also Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) (limitations period begins running from the date the employee knows or reasonably should know that he or she has been discriminated against), citing *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975)[5], and *Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841

---

[5] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

F.2d 1533, 1545 (11th Cir. 1988).

Plaintiff does not address the reasoning of *Ricks*, or any Eleventh Circuit case law, in her argument that she timely initiated contact with Defendant's EEO Office. Instead, she cites to two Seventh Circuit decisions, neither of which supports her argument. *See Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632 (7th Cir. 2004); *Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479 (7th Cir. 2002). In *Flannery*, the court found that the limitations period did not begin to run after the first instance in which the plaintiff learned that he <u>might</u> be terminated, partly due to the "tentativeness" with which the employer had communicated its decision. 354 F.3d at 641. The court explained that

> notice to the employee is only sufficient if it provides a "clear intention to dispense with the employee's services." *Dvorak*, 289 F.3d at 486 [ ]. Requiring employees like Mr. Flannery to file EEOC charges on the basis of <u>ambiguous conversations</u> regarding termination would cause a flood of false charges; litigants would be forced to file a charge at every <u>hint of termination</u> in order to preserve their claims. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir.2000).

*Id.* (emphasis added).

The court finds no ambiguity or tentativeness in Defendant's letter of September 19, 2005, by which it notified Plaintiff that her termination would be effective September 23. (Def. exh. 11). The letter definitively states that Plaintiff's termination "will be effective September 23, 2005 at the close of business,"

11

evidencing a "clear intent" to dispense with Plaintiff's services.  (Id. at 2).

Plaintiff makes much of the fact that she could appeal her termination, and argues that her termination was therefore not final until the appeal process was complete in February 2006.   Nevertheless, "an employer who communicates a willingness to later change a final decision of termination, as through an appeals process, does not render a decision 'tentative' and not final for the purposes of beginning the limitations period."  *Flannery*, 354 F.3d at 637, citing *Ricks*, 449 U.S. at 261, 101 S.Ct. at 505-06.  Furthermore, while Plaintiff argues that the letter is not unequivocal, the only evidence she offers to support this claim is the set of documents described above, indicating that Plaintiff was not officially terminated until February 13, 2006.  (Pl. exhs. 7-13).  None of these documents indicates that Defendant's decision in September 2005 was not final, however.  Rather, the documents merely demonstrate that the effect of the September 2005 decision was not felt until February 2006.[6]  *See Ricks*, 449 U.S. at 258, 101 S.Ct. at 504.

―――――――――――

[6] Plaintiff's supervisor, Cheri Teague, also received a letter from Defendant informing her that her termination would be effective August 26, 2005, for the same conduct for which Plaintiff was terminated.  (Pl. exh. 4 at 2).  Ms. Teague was later permitted to retire on disability, effective in March 2006.  (Pl. exh. 2).

Plaintiff argues that Ms. Teague's retirement evidences the lack of finality of Defendant's decision to terminate Ms. Teague.  According to Plaintiff, Defendant "cannot argue with a straight face" that the language in its letter of decision to Plaintiff was unequivocal, while it communicated with identical language to Ms. Teague that she had been terminated but then allowed her to retire.

Plaintiff next cites to *Dvorak* for the proposition that, because she was still eligible for employment benefits until February 13, 2006, she necessarily remained employed by Defendant until that date. See *Dvorak*, 289 F.3d at 486 (plaintiff could not have been terminated while he continued to receive benefits under the Family Medical Leave Act).

This argument does not support Plaintiff's position that the limitations period began to run on February 13, 2006. The issue is not whether Plaintiff remained employed after she was notified of Defendant's decision to terminate her in September 2005. As explained *supra*, the dispositive question is when the alleged discriminatory act occurred and when Plaintiff was notified thereof. *See Ricks*, 449 U.S. at 259, 101 S.Ct. at 504; *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 30, 70 L.Ed.2d 6 (1981). Defendant decided to terminate Plaintiff and notified her of that decision by September 23, 2005. (Def. exh. 11). Hence, under the reasoning of *Ricks*, the limitations period began to run on that date.

---

Defendant offers no response to this argument. Nevertheless, the court is not persuaded that Ms. Teague's retirement signifies any lack of finality in Defendant's decision to end her employment. Whether Ms. Teague retired or was terminated, the record is clear that Ms. Teague's employment, like Plaintiff's, officially ended within months of Defendant's communication of its decision to terminate her. (Warren Dep. pg. 44). Madison Warren testified that Ms. Teague left her employment with Defendant because she was accused of selling compact discs that she had taken from Defendant's facility. (Id. at 38, 43). Therefore, by merely asserting that Ms. Teague had the option of retiring, and chose to assert that option, after she was notified of her termination, Plaintiff has not demonstrated that Defendant's decision to end Ms. Teague's employment was either ambiguous or tentative.

Because Plaintiff did not initiate contact with Defendant's EEO Office until March 6, 2006, her EEO Complaint was untimely.  (Def. exh. 14).  Consequently, Defendant's motion for summary judgment is due to be **GRANTED**.

> **2.    Plaintiff cannot establish a prima facie case of race or gender discrimination.**

Even if Plaintiff timely initiated contact with Defendant's EEO Office, Defendant is entitled to summary judgment because Plaintiff has failed to present a prima facie case of race discrimination or gender discrimination.

Title VII provides the exclusive remedy for a federal employee who claims that he or she has suffered employment discrimination on the basis of his or her race or gender.  *See Brown v. General Services Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Canino v. EEOC*, 707 F.2d 468, 472 (11th Cir.), citing *Newbold v. United States Postal Service*, 614 F.2d 46, 47 (5th Cir. 1980), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

Plaintiff may present her disparate treatment claim by offering direct or circumstantial evidence that her termination was based on a discriminatory motive. *EEOC v. Joe's Stone Crab, Inc*., 220 F.3d 1263, 1286 (11th Cir. 2000), citing *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir.1996) (a "'plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the

evidence that the employer had a discriminatory intent'" to prove a disparate treatment claim, quoting *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994)).

The record is void of direct evidence that Defendant intentionally discriminated against Plaintiff in deciding to terminate her.  Therefore, Plaintiff must proceed with her claim by offering circumstantial evidence of Defendant's discriminatory intent.

To establish a prima facie case of disparate treatment based on her race or gender, Plaintiff must demonstrate that (1) she is a member of a class protected by Title VII; (2) she was subjected to an adverse employment action; (3) while similarly situated employees outside Plaintiff's protected classes were treated more favorably than Plaintiff; and (4) she was qualified to perform her job.  *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997); *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1336 (11th Cir. 2000).  If Plaintiff establishes these elements as to either claim or both, Defendant must then articulate a legitimate, non-discriminatory reason for terminating her employment.  *Alexander*, 207 F.3d at 1336, citing *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094, and *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir.1999).  If Defendant offers a legitimate, non-discriminatory reason for its decision, Plaintiff may succeed on her claim(s) by demonstrating that Defendant's proffered reason is a pretext for discrimination.  *Alexander*, 207 F.3d at 1336, citing

*Burdine*, 450 U.S. at 256, 101 S.Ct. at 1089; *Lathem*, 172 F.3d at 793; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529-38 (11th Cir.1997).

Plaintiff has satisfied elements one, two, and four of both of her disparate treatment claims. Defendant does not dispute that, as a black female, Plaintiff belongs to protected classes under Title VII on the bases of her race and gender. See 42 U.S.C. § 2000e-2(a)(1). Because she was terminated, the court is also satisfied that Plaintiff has suffered an adverse employment action. Finally, Defendant does not dispute that Plaintiff was qualified to perform her job.

Defendant argues, however, that Plaintiff cannot satisfy the third element of her claims. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562, citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir.1994); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).

Plaintiff alleges that five employees who are not within her protected classes avoided discipline for engaging in the same conduct for which she was terminated. Specifically, Plaintiff points to Harry Frank (hereinafter "Frank"), Andy "the Tour 1 supervisor" (hereinafter "Andy"), Paul Aguirre (hereinafter "Aguirre"), Della Tuggle

16

(hereinafter "Tuggle"), and "Linda."[7]    Plaintiff avers that Arney should have investigated these individuals because Cheri Teague had informed him that "almost all" CFS employees removed compact discs from Defendant's CFS Unit.  (Def. exh. 18 at 4; Arney Dep. pg. 53).  According to Plaintiff, Arney's failure to investigate these employees proves that similarly situated employees outside her protected classes were treated more favorably than herself.

The court is not persuaded by this argument.  First, Plaintiff's department manager, Warren, recommended that Plaintiff, Ms. Teague, and Denise Kelly-Frost be terminated for taking and selling compact discs from the CFS Unit.  Because Franks, Aguirre, and Andy worked in maintenance, Warren did not have authority to recommend their terminations.  (Ward Decl. ¶ 5).  Second, Arney testified that, because he was told that "almost all" of Defendant's employees at its Birmingham facility were removing compact discs from the CFS Unit, he narrowed his investigation to employees whose names were (1) mentioned at least twice by their coworkers as removing compact discs and selling them for monetary gain, or (2) specifically identified by Coconut's as having sold the discs to it.  (Arney Dep. pp. 58-59, 107; Def. exh. 5 at 31-32).  Arney focused on Cheri Teague, Ronald Teague,

---

[7]  The full names of "Andy" and "Linda" are unclear from the record.

Denise Kelly Frost, and Plaintiff because only these individuals were implicated.[8]

(Arney Dep. pp. 13-14, 53, 56; Def. exh. 5 at 38, 44). The record contains no

evidence that any other employee took <u>and sold</u> compact discs from the CFS Unit.

Plaintiff has not demonstrated that she was similarly situated "in all relevant

respects" to Tuggle, Linda, Andy, Aguirre, or Franks. The fact that these employees

were not disciplined does not support Plaintiff's discrimination claims.[9]

_____

[8] Another employee, James Scott (hereinafter "Scott"), was also implicated in Arney's investigation. Because Scott had been terminated for excessive absenteeism prior to Arney's investigation, he was never interviewed for selling the compact discs to Coconut's. (Def. exh. 17, ¶ 4; Id., Att. 5 at 2).

Plaintiff also asserts that, during the course of Arney's investigation, she specifically named Tuggle and Linda as removing items from the CFS Unit. The record does not support this argument. In her own summary of her interview with Arney, drafted four days after the interview, Plaintiff described her conversation with Arney as follows: "[t]hen he [the inspector] said who else take[s] stuff I said every[one] in CFS has taken stuff out of here. Who give us some names. I said everyone that's out there. Then I said Denise [Kelly-Frost]." (Def. exh. 21 at 1).

Similarly, Arney's Investigative Memorandum contains no reference by Plaintiff to Tuggle or Linda during his interview with Plaintiff. (Def. exh. 7 ¶ 7). In the memorandum, Arney described his conversation with Plaintiff as follows: "During the interview, [Plaintiff] only identified her supervisor, Cheri Teague, as having removed other items from the CFS Unit. She would not provide the names of other employees she has personally observed taking items from the CFS Unit." (Id.). At Plaintiff's arbitration hearing, Arney testified that Plaintiff "refused to provide [Defendant] any other names of any other employees" who had taken and sold compact discs from the CFS Unit. (Def. exh. 5 pg. 39). Finally, while Tuggle and Linda also worked in the CFS Unit, Plaintiff neglected to mention either of them to Warren when she discussed her conduct with him. (Def. exh at 54).

[9] Additionally, Plaintiff asserts that she was wrongfully made a "target" of Arney's investigation, because, according to Plaintiff, Arney had no information that she had sold compact discs from the CFS Unit to Coconut's, nor had she been suggested by more than one of Defendant's employees as taking and selling the compact discs for monetary gain. Hence, according to Plaintiff, she should not have been targeted during the investigation for the same

Plaintiff points to no employee outside her protected class(es) who took compact discs from Defendant's CFS Unit, sold them for profit, and was not recommended for termination. Because she has failed to present a prima facie case of discrimination, the motion for summary judgment is due to be **GRANTED**.

### 3. Defendant has offered a legitimate, non-discriminatory reason for terminating Plaintiff, which Plaintiff has failed to demonstrate is a pretext for discrimination.

Even if Plaintiff has presented a prima facie case, her claims must fail because she has not shown that Defendant's legitimate, non-discriminatory reason for terminating her is a pretext for race or gender discrimination.

Defendant avers that it terminated Plaintiff because she took compact discs

---

reason Andy, Franks, Aguirre, Tuggle, and Linda were not.

Plaintiff mischaracterizes the nature of Arney's initial contact with her – the point at which she alleges she became a "target" of the investigation. Arney testified that, when he interviewed Plaintiff, she was a "target" for information, not of the investigation. (Arney Dep. pg. 59-60). Plaintiff did not become a "target" of the investigation until she admitted to having removed compact discs from the CFS Unit and giving them to her son, who sold them to Coconut's. (Arney Dep. pg. 78-81).

Finally, Plaintiff appears to argue that Arney's investigation was, by its nature, discriminatory in that he focused on only black female employees. Plaintiff offers no evidence that Arney deliberately "targeted" black females. Plaintiff asserts that Arney "unilaterally" decided to narrow his investigation as described above. She offers no evidence that this decision was based on a discriminatory motive, nor does she explain why Arney should not have the authority to determine the scope of the investigation, or argue that any other individual would more properly supervise the investigation.

from its CFS Unit and gave them to her son, who sold them for profit.  (Warren Dep. pg. 44).  Each CFS Unit employee who was linked to removing <u>and</u> selling compact discs was recommended for termination.  (Ward Decl. ¶ 3).

In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court explained that "[p]roof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination. . . ."  530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000).

The Eleventh Circuit elaborated on this standard in *Cooper v. Southern Co.*, where it explained that,

> [t]o show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."

390 F.3d 695, 725 (11th Cir. 2004), quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997).

Plaintiff argues that Defendant's asserted reason for terminating her is a pretext for race and gender discrimination.  She offers in support of this argument the affidavits of two individuals who formerly worked in Defendant's CFS Unit, Yolanda Evans and Tim Austin.  (Pl. exhs. 3, 16).  Both individuals explain that they thought Defendant allowed its employees to take waste mail from its CFS Unit.  (Pl. exh. 3

¶ 2; Pl. exh. 16 ¶ 1).  According to Tim Austin, Cheri Teague witnessed employees removing waste mail while under her supervision.  (Pl. exh. 3 ¶ 2).  Yolanda Evans also claims that she saw Warren take waste mail.  (Pl. exh. 16 ¶ 1). She believes that "black employees were treated differently" from white employees, because she once overheard Warren say he had to "watch" Defendant's black employees but not its white employees, because the white employees "do their work."  (Id.).

In essence, Plaintiff argues that Defendant could not have terminated her for taking the compact discs because "the implied policy" at the CFS Unit was that it was okay for employees to remove waste mail.  However, the issue is not whether Defendant allowed its employees to take waste mail from its CFS Unit.  Plaintiff was allegedly terminated for taking <u>and selling</u> the compact discs for personal profit. (Warren Dep. pg. 44).  Therefore, the fact that other employees were taking and not selling the compact discs does not support Plaintiff's argument that Defendant's asserted reason for terminating her was pretextual.

Plaintiff argues that Defendant has no evidence that she sold any compact discs that she removed from Defendant's facility.  As explained *supra*, however, Plaintiff admitted to taking compact discs and giving some of them to her son.  (Warren Dep. pg. 49).  Coconut's verified that Plaintiff's son had sold the discs to its store for monetary gain.  (Arney Dep. pg. 78-81).  Therefore, while Plaintiff herself may or

21

may not have sold any compact discs for monetary gain, the record indicates that she removed waste mail from Defendant's facility and enabled her son to sell it for profit. (Arney Dep. pp. 78-81).

Plaintiff finally argues that, during her ten years of service with Defendant, she was never disciplined for unacceptable conduct and was a good employee. Apparently, Plaintiff asserts that her overall good standing with Defendant should have weighed against Defendant's decision to terminate her.  However, an employer may terminate an employee for a good reason, a bad reason, or no reason at all. *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999), citing *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1324 n. 16 (11th Cir.1998) and *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).  Any argument that Plaintiff's termination was not for a good reason does not lead the court to the conclusion that she was terminated for a discriminatory reason.

The court finds no "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's reason for terminating Plaintiff such that a reasonable factfinder could not find it worthy of credence.  Plaintiff has failed to demonstrate that Defendant's asserted reason for terminating her is pretextual. Therefore, the motion for summary judgment is due to be **GRANTED**.

22

## IV.   CONCLUSION

The court finds that Plaintiff (1) failed to timely initiate contact with Defendant's Equal Employment Opportunity Office as required by 29 C.F.R. § 1614.105(a)(1); (2) failed to present a prima facie case of race discrimination or gender discrimination; and (3) failed to demonstrate that Defendant's legitimate, non-discriminatory reason for terminating her employment was a pretext for discrimination.  Consequently, Defendant's motion for summary judgment is due to be **GRANTED**.  A separate Order will be entered.

**DONE** this the 13th day of September, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23